UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNN SANCHEZ, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>CATHOLIC BISHOP OF CHICAGO, and ARCHDIOCESE OF CHICAGO,<br><br>Defendants. | Case No. 16-cv-06983<br><br>Honorable Rebecca R. Pallmeyer<br><br>Magistrate Judge Michael T. Mason |

## **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants, the Catholic Bishop of Chicago and the Archdiocese of Chicago ("Defendants"), by and through their attorneys, hereby move, pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law. In support of their motion, Defendants state as follows.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 50(a), a trial judge "must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Importantly, a trial judge is not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251, *citing Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871). Thus, the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (emphasis in original).

**ARGUMENT**

In order to succeed on her retaliation claim, Plaintiff must prove that she (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) that a causal connect exists between the two. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).[1] For the causation factor, Plaintiff is required to demonstrate that "the desire to retaliate was the but-for cause of the challenged employment action." *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

Plaintiff failed to provide any evidence that she engaged in statutorily engaged activity or that there was a causal connection between any alleged protected activity and her separation from employment.

**I.    PLAINTIFF DID NOT ENGAGE IN PROTECTED ACTIVITY**

Earlier this year, this Court held that "a plaintiff claiming retaliation must not only have a subjective (sincere, good faith) belief that she opposed an unlawful practice; her belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." *Isbell v. Baxter Healthcare Corp.*, --F. Supp. 3d --, No. 15 C 7333, 2017 WL 1196890, * 11 (N.D. Ill. March 31, 2017) (Pallmeyer, J.). In order to be prohibited by Title

---

[1] Although Plaintiff has alleged separate causes of action under Title VII and the Illinois Human Rights Act, the analysis is the same. *See Gracia v. SigmaTron Int'l, Inc.,* 244 F. Supp. 3d 762, 767 (N.D. Ill. 2017) ("Courts assessing IHRA retaliation claims have adopted the framework used by federal courts in addressing retaliation claims under Title VII"); *Marshall v. Family Dollar Stores, Inc.,* No. 11 C 1477, 2012 WL 1117897, at *2 (N.D. Ill. Apr. 3, 2012) (the anti-retaliation provisions in the IHRA and Title VII are "materially identical").

VII, the underlying discrimination or harassment must: (1) have occurred because of Plaintiff's protected status; and (2) have been directed toward the Plaintiff. *Id.* at *11-12.

### A. Plaintiff Failed to Allege That the IT Vendor Was Viewing Pornography in the Parish Office *Because of* Her Sex

"Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich,* 457 F.3d at 663; *see also Tank v. T-Mobile USA, Inc.,* 758 F.3d 800, 809 (7th Cir. 2014) (complaining about the actions of a co-worker "is not statutorily protected expression when the complained of conduct does not relate to [a protected status]"); *Orton-Bell v. Indiana*, 759 F.3d 768, 776 (7th Cir. 2014) ("merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.")

In *Orton-Bell*, the plaintiff alleged that she was retaliated against after making a complaint that night shift workers were having sex on her desk after hours. 759 F.3d at 769. The Court found that plaintiff had not engaged in protected activity because "Orton-Bell's complaint…that the night-shift staff was using her desk for sex [was] undoubtedly a valid complaint, [b]ut Orton-Bell has not provided any evidence that she rooted her complaint in the fact that she is a woman – which is what is required." *Id.* at 776.

Similarly, in *Lord v. High Voltage Software*, the plaintiff alleged that he was terminated for complaining that his co-workers teased him about his romantic interest in another co-worker, slapped his buttocks, and grabbed him between the legs. 839 F. 3d 556, 559-560 (7th Cir. 2016). The Court found that the plaintiff had not engaged in protected activity because "although [plaintiff's] complaints concerned workplace banter and conduct that had sexual overtones, no evidence suggests that he was harassed because of his sex. Without evidence of a prohibited

3

motive, [plaintiff's] belief that he was complaining about sexual harassment, though perhaps sincere, was objectively unreasonable." *Id*. at 563.

Here, Plaintiff has not once during the pendency of this case, including at trial, alleged that Mr. Castaldo was looking at inappropriate material *because of* her sex. In fact, Plaintiff testified that there were two people present at the office the afternoon she alleges Mr. Castaldo was viewing pornography: she and Mr. Besztery (a man.)

Accordingly, Plaintiff has failed to establish that the underlying discriminatory or harassing conduct occurred *because of* her sex. *See Orton-Bell*, 759 F.3d at 775 ("the conduct was certainly sexual *intercourse* on her desk, but that does not mean that the night-shift staff had sexual intercourse on Orton-Bell's desk because she was of the *female* sex. There is no evidence to indicate that, had her…office belong to a man, it would not have been used in the same manner") (emphasis in original).

### B. Plaintiff Failed To Prove That The Alleged Pornography Was Directed To Her

In order to establish a hostile work environment, the offending conduct must have been directed to the complaining party. *Yuknis v. First Student, Inc.*, 481 F.3d 552, 553 (7th Cir. 2007). The Seventh Circuit in *Yuknis* found that conduct by the plaintiff's co-workers, which included watching pornography, using foul language, and telling vulgar jokes, did not amount to a hostile work environment because "none of the speech and conduct that [plaintiff] complained about was directed at her." *Id.* Importantly, regarding her co-worker's alleged viewing of pornography, the Court stated: "And what if a male coworker is believed…to be watching pornography on his office computer?...It's not as if pornographic pictures were exhibited on the walls of the workplace or emailed to the plaintiff." *Id.* at 555.

Similarly, in *Isbell*, the plaintiff complained to her supervisors about comments made by two co-workers about an erectile disfunction drug, including two incidents of "sexual banter" about the drug, including comments such as "I need some of that." 2017 WL 1196890, * 2. The plaintiff alleged that the two incidents of sexual banter lasted approximately one minute each. *Id.* The plaintiff also complained that one of the co-workers had erectile dysfunction drug paraphernalia "all over the place in his office." *Id.* at 3.

This Court in *Isbell* noted that if the plaintiff's complaints "are of general harassment, not of a sexual nature, then the complaints are not protected activity because they do not identify conduct prohibited by Title VII." *Id.* at *11. Ultimately, this Court held that the plaintiff's complaints were not protected activity, stating "whatever the propriety of [the co-workers'] two jokes, there is no indication that they were intended to harass [plaintiff.] The jokes occurred only twice and the comments took no more than one minute each; there was no touching involved, and [plaintiff] identifies no other conduct that is both sexually charged *and directed at her.*" *Id.* at *12 (emphasis added).

Likewise, in this case, Plaintiff has failed to prove that Mr. Castaldo's alleged viewing of pornography was directed to her. During the first alleged incident, Plaintiff testified that Mr. Castaldo was sitting alone in the supply room viewing the alleged inappropriate images. Plaintiff alleges that when she walked into the room, Mr. Castaldo did not even acknowledge her presence.

During the second alleged incident, Plaintiff testified that, again, Mr. Castaldo was sitting alone in the supply room when she walked in. Plaintiff testified that as soon as he realized Plaintiff had entered the room, he "flipped the screen, so the screen switched to something else." Thus, Plaintiff has not once alleged that Mr. Castaldo was directing any pornography at her; in fact, she alleged the opposite – that he attempted to *prevent* her from seeing whatever he was looking at.

Accordingly, because plaintiff failed to establish the first element of her retaliation claim – that she engaged in protected activity, this Court should grant judgment as a matter of law for Defendants.

## II. PLAINTIFF DID NOT PROVE A CAUSAL CONNECTION BETWEEN ANY PROTECTED ACTIVITY AND AN ADVERSE EMPLOYMENT ACTION

Even if this Court were to find that Plaintiff proved that she engaged in protected activity, thus satisfying the first element of her retaliation claim, she cannot meet the but-for standard in order to prove a causal connection between the protected activity and her termination, thus failing to satisfy the third and final element of her retaliation claim.

In *Lord v. High Voltage Software, Inc.*, the plaintiff made a formal complaint about the conduct of his co-workers, who, as recited *infra*, had slapped his buttocks and grabbed him between the legs. 839 F.3d at 560. The next day, when the plaintiff received an unrelated disciplinary write up, he responded "with a heated email…accusing the company of retaliating against him for a report sexual harassment by a coworker" and "said he was very close to filing a complaint with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission." *Id.* The following day, the plaintiff was terminated, in part, for the insubordination exhibited in his "heated email" to his superiors the day prior. *Id.* at 561. The Court found that, even if the complaints plaintiff made qualified as protected activity, the Plaintiff failed to show "that he was fired *because of* those complaints." *Id.* at 563 (emphasis in original). The Court found that the insubordination exhibited in the plaintiff's "testy email" response was a legitimate nonretaliatory reason for the plaintiff's termination. *Id.* at 564.

Additionally, in a case strikingly similar to the instant case, *Stringel v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 415, 417 (7th Cir. 1996), the plaintiff engaged in a heated discussion with his supervisor, in which he accused her of retaliating against him for filing an EEOC complaint.

The plaintiff continued to attempt to delve into the merits of his claims, and when his manager demurred, the plaintiff told her that "she might as well spit in his face." *Id*. Exasperated with the plaintiff's "badgering," the manager terminated him on the spot. *Id.* The district court granted the defendant's motion for summary judgment on plaintiff's retaliation claim, finding the "the defendants had articulated a legitimate, non-discriminatory reason for terminating [plaintiff] – insubordination – and [plaintiff] had tendered to evidence to suggest that this reason was pretextual." *Id.* at 418.

In this case, Mark Besztery, Plaintiff's supervisor, testified that the reason for Plaintiff's termination was her insubordinate and unprofessional behavior on November 7 and November 9, 2014, which included, yelling, swearing, spitting, and touching Mr. Besztery. Indeed, Plaintiff has admitted to engaging in insubordinate conduct when she testified that she raised her voice to Mr. Besztery on both dates.

Accordingly, Plaintiff has not proven that her complaint about alleged pornography was the "but for" cause of her termination from employment, this Court should enter judgment as a matter of law for Defendants. *See Massey v. Blue-Cross-Blue-Shield of Illinois*, No. 97 C 189, 1999 WL 703 727, * 9 (N.D. Ill. Aug. 26, 1999) (a motion for directed verdict on a retaliation claim is appropriate where the only conclusion that can be drawn is that "Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff which Plaintiff failed to demonstrate was pretextual.")

## **CONCLUSION**

Defendants, The Catholic Bishop of Chicago and the Archdiocese of Chicago, respectfully request that this Court enter judgment as a matter of law for Defendants on Plaintiff's retaliation claim pursuant to Federal Rule of Civil Procedure 50(a).

Dated: November 15, 2017	CATHOLIC BISHOP OF CHICAGO and
	ARCHDIOCESE OF CHICAGO

	By:	*/s/ Elizabeth M. Pall*
		One of Their Attorneys

Rachel E. Yarch (ARDC No. 6274863)
Elizabeth M. Pall (ARDC No. 6306604)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, IL 60611
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
ryarch@burkelaw.com
epall@burkelaw.com

# CERTIFICATE OF SERVICE

       The undersigned, an attorney, states that she caused a copy of the foregoing Defendants' Motion for Judgment as a Matter of Law to be filed and served through the Court's CM/ECF electronic filing system on November 15, 2017.

                                                  */s/ Elizabeth M. Pall*